UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 10-90-GWU


LARRY F. BRUMMETT, II,                                         PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

        Larry Brummett brought this action to obtain judicial review of an unfavorable

administrative decision on his application for Supplemental Security Income.  The

case is before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

        The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

> 1.        Is the claimant currently engaged in substantial gainful activity?
>           If so, the claimant is not disabled and the claim is denied.
>
> 2.        If the claimant is not currently engaged in substantial gainful
>           activity, does he have any "severe" impairment or combination
>           of impairments--i.e., any impairments significantly limiting his
>           physical or mental ability to do basic work activities?  If not, a
>           finding of non-disability is made and the claim is denied.
>
> 3.        The third step requires the Commissioner to determine
>           whether the claimant's severe impairment(s) or combination of
>           impairments meets or equals in severity an impairment listed

1

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  . . .  or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Brummett, a 32-year-old former janitor/cleaner, garbage collector and saw mill worker with a "limited" education, suffered from impairments related to a history of polysubstance abuse (alcohol, marijuana, methamphetamine and benzodiazepines), a history of L5-S1 discectomy, cervical degenerative disc disease and a panic disorder.  (Tr. 14, 17-18).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 16-17).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 18-19).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 18).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Anne Thomas included an exertional limitation to light level work, restricted from a full range by

such non-exertional restrictions as (1) an inability to sit or stand for longer than 20 to 30 minutes at a time; (2) an inability to ever climb ladders, ropes or scaffolds; (3) a need to avoid exposure to hazards such as dangerous machinery and heights; and (4) a limitation to task or object-focused setting requiring only gradual and infrequent work setting changes.  In response, the witness identified a significant number of jobs in the national economy which could still be performed.  (Tr. 427-428).  Therefore, assuming that the vocational factors considered by Thomas fairly depicted Brummett's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

Brummett argues that the ALJ erred by failing to properly consider the opinion of Dr. Magdy El-Kalliny, a treating physician.  However, the only restriction indicated by Dr. El-Kalliny was a need to avoid lifting more than 20 pounds.  (Tr. 388).  The ALJ specifically based his residual functional capacity assessment finding on this opinion.  (Tr. 17).  The physical restrictions of the hypothetical question presented to the vocational expert were compatible with this opinion.  Thus, rather than supporting the plaintiff's disability claim, Dr. El-Kalliny's opinion actually provides strong support for the administrative denial decision.

Dr. Carlos Hernandez, a non-examining medical reviewer, opined that Brummett would be limited to light level work restricted from a full range by an inability to ever climb ladders, ropes or scaffolds and to avoid exposure to hazards

such as machinery and heights.  (Tr. 284-291).  The physical factors of the hypothetical question were also consistent with this opinion.

More severe physical restrictions than those found by the ALJ were not identified by such treating and examining sources as the staff at the Simon and True Medical consultants (Tr. 152-206, 320-339, 344-356), the staff at Kentucky Pain Management Services (Tr. 207-245, 254-276, 307-308, 313-319), the staff at the East Bernstadt Medical Clinic (Tr. 340-341), Dr. Carole Kiphart-Bays (Tr. 357-358), the staff at the Baptist Regional Medical Center (Tr. 367-384), and the staff at Lake Cumberland Regional Hospital (Tr. 385-387).  Therefore, these reports also do not support the plaintiff's claim of disabled status.

The court also finds no error in the ALJ's evaluation of Brummett's mental status.  Treatment notes from Dr. Zev Zusman and Dr. Martin Seigel did not identify the existence of any mental limitations.  (Tr. 277-283).  Psychologist Ed Ross reviewed the record and opined that it did not reveal the existence of a "severe" mental impairment.  (Tr. 292).  The current ALJ's findings with regard to the plaintiff's mental status were essentially consistent with those made in an earlier denial decision made in August of 2004.  (Tr. 38).  In the absence of evidence of a change in the claimant's condition, this finding was binding on the administration.[1]

_____

[1]With regard to the plaintiff's physical status, the ALJ did find deterioration in his condition and made a departure from the residual functional capacity from the earlier decision.  (Tr. 12).

Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997).

Therefore, substantial evidence supports this portion of the administrative decision.

Brummett argues that the ALJ erred by failing to consider whether his condition met the requirements of Section 1.04 of the Listing of Impairments concerning disorders of the spine.  This Listing section requires a claimant to show:

> 1.04 Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic nonradicular pain and weakness, resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R.  Part 404, Subpart P, Appendix 1, § 1.04.  The plaintiff asserts that the results of an MRI scan following his February, 2007 hemilaminectomy and discectomy would support this claim that the Listing requirements were satisfied.

However, the plaintiff has failed to cite where these MRI scan results are located within this record.  The only post-surgical laboratory studies of record appear to have been the June, 2007 CT scans of the plaintiff's cervical spine and thoracic spine obtained by Dr. Carole Kiphart-Bays.  The cervical CT scan revealed evidence of mild degenerative disc disease in the cervical spine as well as hypertrophic changes at C4-C5, C5-C6 and C6-C7.  (Tr. 357-358).  The thoracic spine CT scan revealed mild early degenerative disc disease.  (Tr. 358).  These modest results would not help the claimant meet the Listing requirements.  An MRI scan prior to his February, 2007 surgery had revealed a moderate right-sided L5-S1 disc herniation producing posterior displacement and a flattening of the proximal right S1 nerve root.  (Tr. 397).  But these results would not help Brummett meet the requirements of the Listing either.  Therefore, the court must reject the plaintiff's argument.

Brummett also asserts that the ALJ failed to consider the combination of his impairments.  However, as previously noted, the mental and physical factors of the hypothetical question were found to have fairly characterized the plaintiff's condition. Thus, the ALJ implicitly considered all of the claimant's impairments.  A review of the administrative decision indicates that the ALJ discussed all of the claimant's impairments including his musculoskeletal and mental problems.  (Tr. 14-17). Therefore, the undersigned finds no error.

Finally, Brummett argues that his medical problems would prevent him from maintaining employment and, so, he could not meet the durational requirements for substantial gainful activity.  The plaintiff cites the Ninth Circuit Court of Appeals case of <u>Gatliff v. Commissioner of Social Security</u>, 172 F.3d 690 (9th Cir. 1999).  However, in <u>Gatliff</u>, the record contained considerable evidence that the claimant would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact.  <u>Gatliff</u>, 172 F.3d at 692.  In the present action, Brummett has not identified similar evidence suggesting that he would not be able to maintain employment.  Therefore, the court must reject the plaintiff's argument.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 18th day of January, 2011.

Signed By:

**G. Wix Unthank**

**United States Senior Judge**

12